IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BRITTANY WINN**                                                                      **PLAINTIFF**

   **v.**                                                          Case No.   3:21-CV-515-CWR-FKB

**MANAGEMENT & TRAINING CORPORATION**                          **DEFENDANTS**

                                                                      **(JURY TRIAL DEMANDED)**

## COMPLAINT

In this case, the Defendant discriminated against Plaintiff and then unlawfully banned her from the worksite because she filed an EEOC charge. For this reason, COMES NOW THE PLAINTIFF and alleges as follows:

### PARTIES & RELATED ENTITIES

1.  Management & Training Corporation (MTC) is a private corporation responsible for operating the East Mississippi Correctional Facility in Lauderdale County.

2.  MTC is covered by Title VII of the Civil Rights Act of 1965.

3.  Trinity Services Group, Inc., (Trinity) is a private corporation which provides food service to the inmate of East Mississippi Correctional Facility through a contract with MTC.

4.  Plaintiff Brittany Winn is an adult resident of Alabama and a former employee of both MTC and Trinity.

### JURISDICTION, VENUE, EXHAUSTION, AND JURY DEMAND

5.  Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, specifically the Americans with Disabilities Act and the Rehabilitation Act.

6.  Venue is proper in this honorable Court under 28 U.S.C. § 1391 because all work at issue was located in and around Lauderdale County, Mississippi.

7.  Plaintiff has exhausted administrative remedies by filing a Charge of Discrimination with the EEOC within 180 days of the events at issue here and obtaining a Notice of Right to Sue letter.

8.  Plaintiff is filing this complaint within ninety days of receiving her Notice of Right to Sue letter.

9.  Plaintiff demands a trial by jury on all issues so triable.

## FACTS

10. On August 31, 2020, Ms. Winn was hired by Trinity as a full-time kitchen supervisor.

11. Her pay was $10 per hour plus benefits.

12. On November 2, 2020, Ms. Winn was hired by MTC to work as a full-time correctional officer.

13. Her pay was $11.48 per hour plus benefits.

14. In early January 2021, while Ms. Winn was on a prisoner transport, Ms. Winn contracted a severe respiratory infection.

15. Prisoner transport duties require being close proximity to the prisoner.

16. The prisoner being transported may be ill during the transport.

17. There is an increased risk of contracting illness for the correctional officer conducting the transport.

18. Ms. Winn has an underlying condition of severe asthma.

19. This asthma was diagnosed while Ms. Winn was a child.

20. She has had multiple severe attacks.

21. During an attack, without medical intervention, Ms. Winn may die.

22. Ms. Winn's asthma is managed and treated by the use of an albuterol breathing machine twice a day, and by daily use of a proventil inhaler.

23. She has nonetheless had a history of hospitalization related to her asthma, including once or around November 2019.

24. She was treated during this hospitalization at Whitfield Regional Hospital in Demopolis, Alabama.

25. MTC was aware of Ms. Winn's asthma.

26. On her hiring, Ms. Winn had provided documentation of this medical condition.

27. MTC had excused Ms. Winn from the "mace" test during her onboarding and training as a correctional officer because of her asthma.

28. Ms. Winn also has high blood pressure, which is managed by regularly taking medication.

29. Both Ms. Winn's asthma and high blood pressure are treated by her physician, Judy C. Travis, MD., of the Travis Clinic in Demopolis.

30. Ms. Winn's respiratory infection of January 2021 was treated by Dr. Travis.

31. Dr. Travis faxed a work excuse to MTC which excused her from work during the period from January 12th to January 18th, and which stated that upon her return to work Ms. Winn was "PROHIBITED FROM DOING TRANSPORTS UNTIL RELEASED BY DOCTOR."

32. Ms. Winn was not well on the 19th, and Dr. Travis provided MTC with additional documentation of her illness through the 23rd, which was again faxed to MTC.

33. Ms. Winn returned to work on or about the 23rd of January 2021.

34. Thereafter Ms. Winn's supervisor - Lieutenant Gaddis - called Ms. Winn off her post at unit 2 and told her that she had to do a transport at the Anderson Regional Medical Center in Meridian.

35. Ms. Winn informed the Lieutenant that she was not medically cleared to do transports.

36. The Lieutenant answered "I don't have time for this. You're going to have to talk to HR because I don't have time for this shit."

37. Ms. Winn brought the issue up to Keith O'Banion, the HR Director on site for MTC. She informed him of what the Lieutenant had said. She also told him that she had not been medically cleared to do prisoner transport.

38. She provided O'Banion another copy of her medical documentation.

39. While she waited for him to review the documentation, Ms. Winn sat at the "searches" desk.

40. After he reviewed the documentation, Mr. O'Banion informed Ms. Winn that she was nonetheless required to do the transport. He said "if you don't do the transport you are abandoning your post and that is grounds for termination."

41. Ms. Winn tried to address the issue with Warden Patillo - the highest MTC manager on site - and was informed that the Warden was too busy to help.

42. Ms. Winn then returned to her post and did the transport as ordered.

43. She contracted another respiratory infection as a result.

44. She was also taken off work to get tested for COVID-19.

45. Ms. Winn then returned to work.

46. When she returned to work Lieutenant Gaddis retaliated against her because she had gone to HR, and because of her medical condition.

47. Lieutenant Gaddis required Ms. Winn to get permission to take any breaks in her 12-hour shift, while other COs were liberally granted breaks without permission.

48. Gaddis surveilled her during breaks, and not other COs.

49. Gaddis denied her reasonable breaks, and not other COs.

50. Gaddis also restricted her post assignments, and required her to work only on Unit 3.

51. Ms. Winn is able to work any unit.

52. Unit 3 is a significantly less desirable assignment than other units.

53. Unit 3 requires more frequent security checks.

54. Unit 3 requires more "hands on" work.

55. Unit 3 houses a greater number of the prisoners that take medications.

56. Unit 3 is more onerous to work than the other units.

57. Ms. Winn requested to be moved to a different team, away from Lieutenant Gaddis.

58. Ms. Winn was moved to a different shift with a different Lieutenant, although she was on the same rotation.

59. Lieutenant Coleman - Ms. Winn's new immediate supervisor - kept Ms. Winn working exclusively on Unit 3.

60. When Ms. Winn asked Lt. Coleman why, he said that they had a meeting among the Lieutenants and Lt. Gaddis had told Lt. Coleman that Ms. Winn was only suitable to work on Unit 3, and that this was the reason for her assignment.

61. On March 22, 2021, in light of these intolerable working conditions, Ms. Winn was constructively discharged by MTC.

62. Ms. Winn resigned her position with MTC and returned to working for Trinity as a kitchen supervisor at the facility.

63. On March 24, 2021, Ms. Winn filed a charge and/or intake with the EEOC concerning these issues with MTC.

64. When MTC learned of the charge, it retaliated against Ms. Winn.

65. On May 16, 2021, during a security screening, an officer stated that he smelled marijuana on Ms. Winn.

66. This assertion was false.

67. This was a pretext to retaliate and embarrass Ms. Winn.

68. Ms. Winn was subjected to a strip search.

69. No marijuana or other contraband was found on Ms. Winn.

70. On another occasion, Ms. Winn's personal items were searched invasively without cause.

71. Per the rules, the contents were in see-through bags, so that they could easily be inspected without handling them directly.

72. Nonetheless, Ms. Winn's items were emptied out of the bags during the "search" without cause.

73. Ms. Winn was also instructed by MTC management that she was not permitted on a unit without an "escort" from MTC.

74. Other Trinity staff did not require any "escort" from MTC.

75. The Warden asked to talk to Ms. Winn directly a number of times. He made these requests of the director at Trinity.

76. Warden Patillo also began coming into the kitchen and sending captains in to keep surveillance on Ms. Winn and to go through her belongings.

77. This was highly unusual, and had not happened (to Ms. Winn's knowledge) prior to Ms. Winn's EEOC charge.

78. On July 31, 2021, the officer in camp support (unit seven) brought the food trays back and said the offenders refused them and wanted something different. Ms. Winn replies that she was not allowed to change the menu and sent the food back around to the unit.

79. On August 3, 2021, MTC revoked Ms. Winn's "clearance" to come into the facility, including the kitchens where she worked for Trinity.

80. The stated reason for this revocation was that Ms. Winn had "not fed" unit seven on July 31, 2021.

81. This was untrue and a pretext.

82. The true reason was to retaliate against Ms. Winn for engaging in protected activity by requesting reasonable accommodations and filing an EEOC charge.

83. Because Ms. Winn could no longer access the workplace as a result of MTC's actions, Trinity terminated Ms. Winn's employment.

84. Ms. Winn was harmed by MTC's actions as described above, which caused emotional distress and loss of income and benefits.

<u>CAUSES OF ACTION</u>

COUNT I: DISCRIMINATION UNDER THE ADA

85. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

86. Per the Americans with Disabilities Act, Defendant is prohibited from discriminating against an employee because of that employee's disability.

87. Plaintiff's asthma limits her breathing. Her high blood pressure limits physical activities such as running.

88. Because of her conditions, she must receive regular breaks.

89. Because of her conditions, she must not be exposed to infectious respiratory diseases.

90. Plaintiff's conditions are disabling as defined under the ADA.

91. It is unlawful to discriminate against a person by failing to reasonably accommodate a disability, taking adverse action, harassing them or otherwise treating them worse because of their disability.

92. Here, Defendant discriminated against Plaintiff because of her disability.

93. Here, Defendant harassed and constructively discharged Plaintiff based on her disability.

94. In so doing, Defendant violated the law.

95. Such violations harmed Plaintiff.

COUNT II: RETALIATION UNDER THE ADA

96. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

97. Per the Americans with Disabilities Act, Defendant is prohibited from retaliating against an employee because of that employee's engaging in protected activity.

98. Protected activity includes requesting reasonable accommodations, opposing discrimination, or having made a charge or otherwise participated in an investigation, proceeding, or hearing under the ADA.

99. Here, Defendant constructively discharged Plaintiff, harassed her, and then banned her from the worksite thus interfering with her employment by a third party, and all of it was because she engaged in protected activity under the ADA.

100. With this retaliation, Defendant violated the law.

101. In so doing, Defendant harmed Plaintiff.

COUNT III: DISCRIMINATION UNDER THE REHABILITATION ACT

102. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

103. Defendant is a recipient of federal funds and subject to the Rehabilitation Act.

104. Per the Rehabilitation Act, Defendant is prohibited from discriminating against an employee because of that employee's disability.

105. Plaintiff's asthma limits her breathing. Her high blood pressure limits physical activities such as running.

106. Because of her conditions, she must receive regular breaks.

107. Because of her conditions, she must not be exposed to infectious respiratory diseases.

108. Plaintiff's conditions are disabling as defined under the Rehab Act.

109. It is unlawful to discriminate against a person by failing to reasonably accommodate a disability, taking adverse action, harassing them or otherwise treating them worse because of their disability.

110. Here, Defendant discriminated against Plaintiff because of her disability.

111. Here, Defendant harassed and constructively discharged Plaintiff based on her disability.

112. In so doing, Defendant violated the law.

113.    Such violations harmed Plaintiff.

## COUNT IV: RETALIATION UNDER THE REHABILITATION ACT

114.    Plaintiff incorporates all allegations set forth in all other sections of this

complaint.

115.    Per the Rehabilitation Act, Defendant is prohibited from retaliating against an

employee because of that employee's engaging in protected activity.

116.    Protected activity includes requesting reasonable accommodations, opposing

discrimination, or having made a charge or otherwise participated in an

investigation, proceeding, or hearing under the Rehabilitation Act.

117.    Here, Defendant constructively discharged Plaintiff, harassed her, and then

banned her from the worksite thus interfering with her employment by a third

party, and all of it was because she engaged in protected activity under the Rehab

Act.

118.    With this retaliation, Defendant violated the law.

119.    In so doing, Defendant harmed Plaintiff.

## COUNT V: TORTIOUS INTERFERENCE

120.    Plaintiff incorporates all allegations set forth in all other sections of this

complaint.

121.    Under the common law of Mississippi, it is unlawful to tortiously interfere

with the contractual, business or employment relationships of another person.

122.    Under the doctrine of *Wertz v. Ingalls Shipbuilding, Inc.*, 790 So. 2d 841

(Miss. Ct. Ap. 2000), this includes wrongfully banning the employee of a

contractor from the worksite.

123. Defendant wrongfully banned Plaintiff from the worksite, and thereby tortiously interfered with her relationship with her employer, Trinity.

124. In so doing, Defendant violated the law.

125. In so doing, Defendant harmed Plaintiff.

## REMEDIES

126. Plaintiff seeks all remedies available, including but not limited to the following:

    a. Back pay;

    b. Reinstatement and/or front pay, as appropriate;

    c. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

    d. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

    e. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

    f. Pre- and post-judgment interest;

    g. Attorney fees;

    h. Costs;

    i. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

    j. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

    k. Any other equitable relief as this honorable Court deems appropriate.

11

l.  A final judgment declaring that Defendant's treatment of Plaintiff was

unlawful; and/or,

m.  Any other relief available under any applicable principle of law or equity.

Respectfully submitted on August 9, 2021,

Brittany Winn

BY:  /s/ Joel Dillard
     Joel Dillard (MSB No. 104202)
     JOEL F. DILLARD, P.A.
     775 North Congress Street
     Jackson, Mississippi 39202
     (601) 509-1372, ext. 2
     joel@joeldillard.com

OF COUNSEL:  Jay Kucia (MSB No. 106123)
             JOEL F. DILLARD, P.A.
             775 North Congress Street
             Jackson, Mississippi 39202
             (601) 509-1372, ext. 1
             jay@joeldillard.com